UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 2 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL CASE NO. 07-151 |
| | : | |
| v. | : | VIOLATIONS: 18 U.S.C. § 371 |
| | : | 1037, 2 |
| ADAM SWEANEY | : | (Conspiracy, Fraud Relating to |
| | : | Email, Aiding and Abetting) |
| Defendant. | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the government, through its undersigned counsel, and defendant Adam Sweaney, advised by his undersigned counsel, Nathan I. Silver, stipulate and agree that:

1. The Department of Justice – Antitrust Division, is a division of a federal government agency that is involved in the furtherance of the administration of justice. Its computers affect interstate and foreign commerce and are used in furtherance of the administration of justice.

2. On July 21, 2006, a Federal Bureau of Investigation ("FBI") Special Agent acting in an undercover capacity ( hereinafter referred to as "UCA") sent an instant message via the internet to defendant SWEANEY in response to postings investigators had observed on a website catering to those involved in spam activity. "Spam" refers to sending massive amounts of unwanted and unsolicited emails to computer users, which often offer for sale counterfeit services and products. The UCA told SWEANEY that the UCA was looking for proxies. In this context, proxies refers to compromised computers that are controlled remotely by someone other than an authorized computer user. A compromised computer is one which has been infected by a malicious program or code without the knowledge or consent of the computer owner. Proxies are commonly used by

those engaged in computer fraud, including spam and phishing – attempts to defraud consumers by getting them to interact with counterfeit email or websites that appear to be trusted and known. When thousands of proxies are linked together, they become a powerful tool which can be utilized for criminal activity.

    3. On July 07, 2006, defendant SWEANEY had posted a message on a website and on-line forum frequented by those involved in illegal use of spam emails. The subject line of the message read "proxy slots available". The text read "we have socks 4 proxy slots available msg for more details aim/skype:promail757  If you need some new email databases msg us. We have about anything u (sic) want!!!" A similar message had been posted by defendant SWEANEY on May 10, 2006. The subject line of that message read "peas." The text read "We have a few open slots for peas! Msg.... on aim/skype for samples." "Peas" in this instance is internet jargon for proxies. Aim and Skype are internet based communication platforms that allow for individuals to send instant and private messages to and from each other. Likewise, on May 08, 2006, defendant SWEANEY posted a message entitled: "50 million gi domains delivery 87% $...." The text of the post read "last month sents 50 million gi small domains, delivery 87% price $500.00  Also still have full FTP server setup with lots of data…plus updated last weekend with some fresh files/shyt… PM for more info". In this instance gi represents the internet in general. Defendant SWEANEY was offering to sell 50 million Global Internet addresses to any interested party for the price of $500.00 and was stating that the 50 million email addresses being sold have an 87% delivery rate.

    4. On July 21, 2006, the UCA contacted defendant SWEANEY via instant message about the purchase of proxies. Defendant SWEANEY responded to the UCA providing a twenty minute free trial of the proxies via a website. The UCA verified the proxy servers were active and purchased

a week of access from defendant SWEANEY. At that time, defendant SWEANEY enabled the UCA access to the proxies via the website.

5. On August 15, 2006, the UCA again contacted defendant SWEANEY. Defendant SWEANEY advised that he was selling access to over 6000 proxies for $200 per week. Additionally, defendant SWEANEY advised the UCA that defendant SWEANEY had for sale hotmail.com email addresses at a rate of $10 per million addresses. Defendant SWEANEY indicated to the UCA that defendant SWEEANEY had approximately 18,000,000 hotmail addresses for sale. Defendant SWEANEY stated the fee for two weeks of proxy service and the hotmail.com email addresses totaled $550 rather than $580, granting a discount for two weeks of service paid at one time.

6. On August 15, 2006, the UCA purchased from defendant SWEANEY access to the proxies and the hotmail email addresses for $550. Upon receiving payment, defendant SWEANEY provided the access to the proxy list and the list of hotmail email addresses. Defendant SWEANEY further stated the UCA's originating Internet Protocol Address (IPA) is required to allow him to "lock down" the server, meaning restrict access to only users permitted by defendant SWEANEY. Access to the proxies were provided to the UCA from August 15, 2006 until August 30, 2006.

7. On August 30, 2006, the UCA again contacted defendant SWEANEY, who offered to renew the UCA's subscription to access the proxies and to sell a list of approximately Fourteen (14) million Yahoo! Email addresses for $540.00. The UCA purchased both proxy access and the Yahoo! Email addresses by sending a payment of $540 via PayPal to defendant SWEANEY. Upon receiving payment, defendant SWEANEY provided the access to the proxy list and the list of yahoo

email addresses. Access to the proxies were provided to the UCA from August 30, 2006 until September 30, 2006.

8. On February 13, 2007, the UCA again contacted defendant SWEANEY, who again offered to renew the UCA's subscription to access the proxies for $200.00 per week. On February 22, 2007 the UCA purchased two weeks of proxy access from defendant Sweaney. In return, defendant SWEANEY provided the UCA with particular URL(s). Defendant SWEANEY stated to the UCA that one URL related to unchecked peas. Peas is internet jargon for computer proxies. The UCA was able to access the proxies through the URL(S) from approximately February 23, 2007 until March 7, 2007.

9. From the time period of July 21, 2006 until March 7, 2007 the UCA made four purchases from defendant SWEANEY for access to a proxy network and millions of Hotmail and Yahoo! Email accounts. The FBI downloaded the proxies from the URL(S) provided by defendant SWEANEY at intervals during the subscription periods. The proxies were identified by unique Internet Protocol Addresses. The FBI created a list of all the unique proxies provided by defendant SWEANEY, ensuring duplicates were removed. The total number of unique proxies provided were over 900,000.

10. One of the unique proxies provided to the UCA by defendant SWEANEY was assigned to a computer which is the property of the United States Government, Department of Justice - Antitrust division. A representative from the Department of Justice, Antitrust division provided the original hard drive from this internet computer to the FBI for examination. The representative also provided a statement that the Department of Justice, Antitrust Division did not authorize non-Antitrust Division employees to access this computer, sell access to the

computer, or place unauthorized software on the computer.

11. Results of the undercover operation between the UCA and defendant SWEANEY establish that defendant SWEANEY was in control of at least 900,000 proxies which are globally located and include compromised computers in Washington, D.C. Proxy merchants obtain unauthorized access to protected computers by transmitting a program, information, code, or commands. In doing so, the proxy merchant intentionally causes damage to the computer by compromising the integrity of the computer and allowing other individuals to further victimize the computers in furtherance of other illegal activity. Those involved in sending massive amounts of spam email, for example, could use proxies to mask their identity and the origin of the spam email and could increase the likelihood that their spam email would be received by the intended recipients and would not be captured by filtering and security software. In this case, initial access to the compromised computer appears to have been accomplished by coconspirators, not defendant Sweaney.

12. On April 27, 2007, defendant SWEANEY was interviewed by Special Agents of the FBI. Defendant SWEANEY stated that he earns approximately $2,0000 each month by selling proxy services and email addresses. He obtains these lists from other co-conspirators and others. Defendant SWEANEY's customers use the proxy lists and emails to send out massive amounts of spam emails. Financial records obtained relating to defendant Sweaney's transactions confirm that defendant Sweaney's customers include individuals known by law enforcement to distribute massive amounts of commercial spam. This includes at least one individual who has sent more

than 100 electronic messages in a 24-hour period, more than 1,000 electronic messages during a 30-day period, and more than 10,000 electronic messages during a one-year period.

Respectfully submitted,
JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA

By: _____
G. Bradley Weinsheimer
Assistant United States Attorney
555 4th Street, N.W.,
Washington, D.C. 20530
(202) 514-6991
Bar Number 431796

## DEFENDANT'S ACCEPTANCE

I have read every word of this Statement of Offense. Pursuant to Fed. R. Crim. P. 11, after consulting with my attorney, Nathan I. Silver, I agree and stipulate to this Statement of Offense.

Date: 7-10-07

_____
ADAM SWEANEY
Defendant

I have discussed this Statement of Offense with my client ADAM SWEANEY. I concur with his decision to stipulate to this Statement of Offense.

Date: 7/10/07

_____
Nathan I. Silver
Attorney for the Defendant